The next argued case is No. 19-2374, Myco Industries, Inc. v. BlephEx, LLC. Mr. Mario. Thank you, Your Honor. May it please the Court. The District Court in this case based its preliminary injunction on two separate legal errors. This Court should reverse. With respect to the first legal error, the District Court enjoined in a preliminary fashion, BlephEx's speech about its patent rights without the required showing of bad faith, in direct violation of a long line of this Court's precedent, including the Mycon Gaming case, Zenith Electronics case, and the GP Industries case. I have a factual question. Search as I may. I did not find any place where there is any evidence that a customer was actually threatened with a direct suit versus just saying that there's infringement by the manufacturer and that perhaps there would be an action against the manufacturer. I didn't see any evidence. Is there evidence in the record? Judge Romali, you're exactly correct. You didn't see any evidence because there was no evidence in the record that any threat was ever made to a customer in general, much less to a medical practitioner in specific. There's no evidence in the record of any kind of that nature. The most they have, and this is a dispute that the District Court said was unresolved, that neither side was more credible. The most that the Myco, the alleged infringer, says happened was they say, Dr. Reinerson, the named inventor, said there is an infringement and I'm going to do something about it. Words to that effect. Never threatened any potential customer, never threatened a medical practitioner, and even those words are contested because Dr. Reinerson declared that he did not have that. He did not make that statement that he was going to take action, more that he was going to review with his attorneys and decide what to do. And the District Court found that neither side was more credible about the actual words that were spoken, neither Mr. Choate nor Dr. Reinerson. But Your Honor is absolutely correct. Even if we go with disputed versions of the fact, no one is asserting that Dr. Reinerson said to a customer, I'm coming after you, or said to a doctor or other medical practitioner, I'm going to sue you. So there's no threat to the record of any kind of that nature. So assuming that there were, though, that there were such a statement, would that change your argument about the impact of customer immunity? So the District Court here enjoins statements to all customers, not just medical practitioners. I understand the argument that Myco makes about medical practitioners and they themselves can't be liable for infringement, even though they can be infringers and be the basis for an indirect infringement allegation. But there is no accusation that such a statement was made to a medical practitioner or to a customer in general. If there were such a statement to customers in general, distributors, suppliers, supply chain customers, there could still be, as long as it was not in bad faith, those would still be protected statements under this Court's precedent. Okay, but let me, but follow my hypothetical. So if there had been a threat to a medical professional that said, I'm going to sue you, knowing that that medical professional is immune from any liability, wouldn't that at least be a basis from which you could infer bad faith? It would depend then, in my view, it would depend then who said it. Was it a lawyer, a skilled patent attorney, or is the person who was alleged to have said it a medical doctor, someone who may not be familiar with the statutes governing here, and did they have bad faith when they said it? If somebody, like a patent lawyer, who knows for sure that a suit can't be brought against a surgeon and have damages against the surgeon, and the patent lawyer said that, then... Does there have to be subjective bad faith, even though objectively the statement is false? Has to be. This Court has said several times, objectively baseless. So it could, I could see a scenario where perhaps, even if the person didn't know, they couldn't sue a surgeon if they said it. Maybe it could be objectively baseless, because objectively under the statute, you can't get damages from the surgeon. Maybe. I've never seen a case on this Court going to that exact issue where you had a subjective good faith belief, but a statute shows that you're wrong. I don't know that I've seen a case in this Court where it's gotten down to that level of detail, but I understand your hypothetical. It would be a very interesting question. Here, in contrast, we don't have Dr. Reinerson even alleged to have threatened any medical practitioner with suit. We don't have Dr. Reinerson even alleged to have threatened any customer of any kind, medical practitioner or otherwise. We just have the allegation, and again, it's a dispute that the District Court did not resolve, because it specifically did not find either side more credible on this, where there may have been generalized statements that the AVMAX might infringe, and Dr. Reinerson may take action. At the most, that's alleged. So then the injunction is predicated on the conclusion that there can't be infringement under the District Court's construction of the term, and I understand that your friend on the other side is going to argue there was no actual claim construction, but it's kind of hard to read the District Court's opinion and not at least believe that the District Court had to construe what the patent covered in order to say there can't be infringement. Judge O'Malley, you're exactly correct. This was the basis for the District Court's ruling, and there was a construction. The District Court found, if we look at pages 12 and 13, that posterior blepharitis and inner margin were material to the 718 patent, and the decision at page 15 said, well, the patent is limited to treating posterior blepharitis and the accused device treats anterior blepharitis. Therefore, there can't be infringement. In my reading, that's claim construction. That's saying the claim covers X. The accused device does not X. Therefore, there can't be infringement. So do we read the District Court as having concluded that that statement of there is infringement, and I may do something about it, that that statement was by definition false? The District Court never made that conclusion. In fact, if we look at page 19 of the decision, the District Court actually said and concluded that there was no record evidence that Dr. Reinerson ever made any false or misleading statements about the ABMAX. This is really what's so interesting here, because there's an injunction on speech, and there's this Court's precedent saying you have to have bad faith statements, but then the District Court itself on page 819 found there was no evidence of a bad faith or misleading statement. Well, clearly the District Court was trying to avoid accusing someone of bad faith. I get that. But I don't know how you escaped the conclusion that the District Court thought a claim of infringement would be false. The District Court on reviewing it certainly construed the claims to be limited to posterior blepharitis, and for that reason found that there was a likelihood that MICO would prevail on showing non-infringement, but the District Court did say he did not believe and did not find evidence that Dr. Reinerson made any false or misleading statements. And with this, I would go to the point that reasonable minds can differ about what a patent covers. We've heard some arguments today and every day in this Court where reasonable minds and attorneys and judges can differ on what a patent reasonably covers, and here it has to be bad faith. It can't just be I think my claim covers Y and it's no, it's Y prime. It has to be bad faith. You have to know it doesn't cover what you're accusing of being covered. And here there's no evidence of any kind that Dr. Reinerson was saying that his patent was directed to something that he knew it wasn't directed to. No evidence that in some cases this Court has seen where Dr. Reinerson was asserting a patent he knew to, for example, have been expired. This Court has seen cases like that. Well, it's bad faith that you're accusing somebody of infringing a patent and you know it's expired. Can I ask you what kinds of statements does your client want to make to customers that the injunction precludes it from making? Right now it's a two supplier market and customers are coming to my client saying, well, why should I keep buying your patented device, the BLEFX device, when the AV Max is available at a cut rate? It's cheaper. Why should I buy from you instead of buying the cheaper one? And one of the things my client would like to be able to say is, well, mine is the patented original innovative one. The other one that's being sold is an infringement and I'm taking action to address that. But that is an infringing copy. I have the patented original and for some people they have a concern and they'll respect that. I know I would. I don't want to buy an infringing device or at least I would certainly think about it. And so my client wants to be able to talk about his patent rights, wants to be able to point to the fact that there is a litigation ongoing and that this is a question. And this litigation conceivably could result in the other side's product being taken off the market and the owners of the products might not be able to get spare parts. It could be. Very well. I mean, we have asked for an injunction in that case. This is a very straightforward substitution case in a two supplier market. There's no reason for their product to be on the market. It's the same as our product. It's an infringing copy and if their product disappeared, our product could cover the supply. So it's a perfect situation for an injunction and we have asked for it. And if they were then caught short with the infringing product, they would have to switch the swabs that are replaceable on the product itself. Exactly your point, Judge Toronto. And taking even a step back, I imagine some people in the world don't want to buy an infringing product or one that has a cloud over it until the cloud is resolved. But in your view, would any restraint be acceptable? Is it conceivable to devise some sort of condition that keeps the competitive situation sufficiently fluid? After all, if the patentee prevails, it can recover its losses monetarily. I think, Your Honor, I would say under this Court's precedent, especially the GP Industries case, and I know you're, Your Honor, fully aware of the GP Industries, where this Court has said these injunctions on speech about patent rights should be a rarity and they're strong medicine only to be used in a rare circumstance. Here, Judge Newman, I don't think there's any need for that strong medicine. My client isn't out there in the marketplace wanting to say anything outrageous. He just wants to be able, when customers come and ask him about his product, to say, my product is patented. Let's go down the road then with Judge Newman's question. So we say you had to have a bad faith finding, and there wasn't one. So we reverse. But, you know, because claim construction at the preliminary injunction stage, even if it occurs, is preliminary, and so we don't touch the claim construction. Now, does going out and saying what you want to say then put you in a position of bad faith? Because you've got the district court having construed the claim in a way that says there's no infringement. I would argue that it should not because we've got a good faith basis that our construction is correct. But, Judge O'Malley, I think to your point, that actually suggests and supports this court correcting the district court's erroneous claim construction at this point because there is a finding in preliminary on claim construction. It was a basis for the erroneous injunction. This court does have the ability to correct that preliminary claim construction, and by doing so, it would avoid, Judge O'Malley, the exact circumstance you're speaking of where you reverse the injunction. My client then tells a customer that there's an infringement suit, and then we get another allegation from MICO that, well, that statement is now in bad faith to your point, Judge O'Malley, because there's been a preliminary claim construction. We would argue an erroneous one, but they would say, well, it's the only one on the record, and they're not supporting it in the Markman construction. They're now saying indefiniteness. So it would just, if this court doesn't correct the claim construction, that construction could just hang out there. Well, that's what I was going to ask you. So you've got a Markman hearing that's set for pretty soon, right, April? Yes. And there's been briefing on the claim construction? Yes, Your Honor. And you're saying that they're asking for a claim construction now that's different from the one that the district court adopted at the preliminary injunction phase? Yes, Your Honor. It surprised me completely, but they did. They didn't go to the district court on claim construction and say the claims are limited to posterior blepharitis, which was the exact basis of seeking their preliminary injunction. They now go and say, oh, the claims are indefinite. We don't know what inner edge of the eyelid margin means or inner edge portion of the eyelid margin means. They have walked away completely from their argument that the claims are limited to treating posterior blepharitis. So if this court doesn't correct that erroneous claim construction, it might continue to exist in the record, even though it was preliminary only, but it might be a basis for another allegation, that some statement about Dr. Reinerson's patent rights are somehow in bad faith, even if this court were, in my view, correctly to reverse the injunction on speech under the court's long line of precedent. So that's why, as the second ground, I would ask the court to correct the erroneous claim construction. There was, the district court found, the claims to be limited to treating posterior blepharitis. That's wrong under plain language, given that there's no disavowal and no definition. It's wrong under claim differentiation, because Claim 15, the dependent claim, specifically says contacting the inner margin, which is where posterior blepharitis occurs. Claim 1, the independent claim, doesn't say it. It says contacting between the eyelashes and the inner edge of the inner margin, so the whole eyelid margin. So if we look at claim differentiation, if we look at plain language, the claim construction is wrong. Moreover, if we look at this court's libel-flarsheim decision and the MIT versus Shire decision, this court in those cases looked at claim language and proposed amendments that were talked about during prosecution, but never got entered, never made it into the final claims. That's what happened here. Below, Michael pointed to a statement in one examiner interview record that they say supports a finding of disavowal or disclaimer, but when the examiner asked to put that language in the claim, the applicant said no and disagreed, and the final claims as issued never included that language limiting independent claim 1 to contacting just the inner half of the eyelid margin. So under the libel-flarsheim MIT-Shire case, as I just mentioned, this court has said a person of ordinary skill looking at the whole record wouldn't assume that that language was binding or that a disclaimer was made or that a proposed amendment was put in because they would have seen that it didn't make it into the final claims as issued. So for those reasons, we would ask that not only the injunction on speech be reversed, because there's not the required finding of bad faith. In fact, there is a finding that there was no showing of bad faith in the record. Again, on page 19 of the district court's decision, and that's why we ask for reversal and not mere vacatur on that. But we also ask that this court reverse the incorrect claim construction. I know it's only a preliminary claim construction, but, Judge O'Malley, to your exact point, if it's allowed to hang in the record, given that they've now changed their arguments at the margin hearing, it could be a basis for further arguments about good faith or bad faith statements about the patent rights, and we might be right back here taking up the court's time on the same issue that I think can be avoided if the court corrects the erroneous claim construction at this stage. Okay. Let's hear from the other side. Let's have some rebuttal. Mr. Smith. Thank you, Your Honors. May it please the Court. Can I ask, on that last point, are you prepared to stipulate that there was no limitation in the claims or disclaimer of anything other than, what is it, posterior blepharitis? Did I pronounce that correctly? Yes, that is correct, Your Honor. What we would stipulate, too, is that the claims mean what the claims say, and in the context of this case, where we're talking about anterior blepharitis versus posterior blepharitis, and the key here is the court had a fact finding on anterior blepharitis, which limited it to basically at the edge of the eye, including the eyelashes, and posterior was everything posterior to that. And so what we would stipulate is the language in the claim, which says contacting a portion of the eye between the eyelashes and the inner edge of the eyelid constitutes the portion of the eyelid which is affected by posterior blepharitis, and that's kind of our position with what the district court did. The district court looked at that claim language, and it also looked at Claim 17, which has slightly different language. It talks about an inner edge eyelid portion. But the district court looked at both claims and made a determination in this argument, which we're talking about anterior blepharitis and posterior blepharitis. In fact, the ABmax, the AB part stands for anterior blepharitis specifically. So that was the dispute here. So the court, in reaching that conclusion, we submit, reached the conclusion that that contacting language of the claim was the posterior portion of the eye that would be affected by posterior blepharitis. When the district court goes through its analysis, it talks in these terms of posterior and anterior. But if you strip that all away and you just look at the actual claim language which we're actually discussing here today, and you look at what the court's fact finding, which is not in dispute here, that anterior blepharitis affects the edge of the eyelid and where the eyelash meets it or connects to it, that does not fall within the area between the eyelashes and the inner edge of the eyelid margin. So that's our position of why the court reached the conclusion that it did. It was based on effectively a plain, ordinary reading of that contacting language from the claim language. And I would make the point that... But it seems that the court was actually making a finding of disclaiming anything that had to do with anterior versus posterior. I think in this context that's correct because... But you now would not argue for that. Well, I would argue for that, yes. In the context of the court's ruling in which the court had a fact finding that anterior blepharitis affects the eyelashes and the edge of the eyelid and where the eyelashes join it, the language that ultimately BlephEx adopted with the back and forth of the examiner does exclude that because it's contacting the area between the eyelashes and the inner edge of the eyelid margin. And that's what we're actually briefing, and that's what's going to be before the district court on April 16th. We've taken the position that... But you would not... Is it true that you would not currently endorse the claim construction that was in the preliminary injunction order? I would endorse that claim construction because that claim construction limited the claims in the context of anterior blepharitis versus posterior blepharitis to the posterior blepharitis section of the eye which is treated, which they do because contacting the area between the eyelashes and the inner edge of the eyelid margin constitutes that area that is treated for posterior blepharitis. As the court's fact finding on APPX3 concluded... Have you already filed your written document on your proposed claim construction? Yeah, we've briefed it completely and actually... In that document, do you say in the alternative this is indefinite or if not indefinite, then we have the following claim construction? Actually, I direct the court to APPX1102. It's the claim chart that was part of the appendix here. It was actually submitted to the court by the parties regarding claim construction, which has now been briefed. But in that proposal, we have two arguments. The indefiniteness aspect of this, which isn't really an issue here, but... Well, it could be an issue. Well, it could. If you had said this is indefinite and can't be construed, that would go some way toward undermining the soundness of the district court's preliminary claim construction. Right? Yeah, I agree. Yes, Your Honor. And don't you actually say in your markment briefing that the whole posterior blepharitis point is irrelevant? When actually construing the claims, if you strip the facts away and whether there's infringement or non-infringement, yes, it's about construing the actual claim language, which as the position we put forth in the district court, we broke it into two parts. Your Honor asked about the indefiniteness aspect, which was raised by counsel. We are confessing that the term inner edge of the eyelid margin is indefinite and the inner edge portion of the eyelid margin is indefinite. But did you say that the posterior blepharitis limitation is irrelevant? Is irrelevant? Yes. It's irrelevant to whether the word between in the contacting the area between the eyelashes and the inner edge eyelid margin means between as not counting the end points, not including the eyelashes, which is what we're talking about here with respect to anterior blepharitis, or whether it includes that, which is what blepharitis position is. And that's what's being debated at the district court right now is this use of the word between and what that entails. Well, do you agree that it's necessary for us to construe the claim in order to decide the question of the preliminary injunction? For purposes of the likelihood of success on infringement, yes, the court will have to look at this content. If you construe the claim, that ends it. It's construed. Not for one purpose or another. Do you agree that that's necessary? Yes. For the court to look at whether or not there's a likelihood of success on infringement specifically, and specifically with respect to this contact limitation that we're talking about, the court will have to look at that term to determine whether. Not for infringement specifically. Let's just talk about claim construction. Claim is construed objectively. It's then applied for whatever validity or infringement. Yes. I want to be certain that you're both in agreement that that issue is before us for decision and must be decided in order to resolve the issue of the injunction. Now, I would take issue with whether it needs to be decided to resolve the issue of the injunction. That's my question. Okay. That was my only question. Because our position is that regardless of the claim construction, regardless of whether there's infringement or not. Infringement is not before us, is it? It is in the context of the likelihood of success problem, but with respect to the bad faith aspect of this, which a lot of this has come down to, it's our position that whether or not. Bad faith relates to the injunction, to the speech, does it? Not to the fact that there's a final decision. Or do you disagree with that theory? I don't disagree with that. I don't disagree that for purposes of finding whether the court erred in finding non-infringement, the court will have to look at the meaning of the term, the contact limitation specifically. And is your position that's before us for final decision? The construction of that term would be considered yes. And whether the district court erred in what we believe was reading the plenary meaning of that term to mean contacting between the eyelashes and the inner eyelid margin does not include those end points. That would have to be decided. I just want to be clear that you both agree. We must decide the dispute about claim construction in order to decide the propriety of this preliminary injunction. Yes, if the court feels it takes issue with what the district court did with respect to that, yes. The court will have to address that further. What about the bad faith? I mean, can you answer my factual question? I didn't even see an allegation by you that any customer was threatened with lawsuit. Yes, Your Honor. I wrote the court to APPX 522, and this was part of the record on appeal and at the district court. And it's an email that was sent by an optometrist to our client after this conference that kind of led the DJ action and led to where we're at today. And in that email, he actually said that, and I'm going to read this slowly just want to listen to the record. Yesterday, when I took a break from filming at J&J's booth, I walked by the Bluff Mex booth. Right, but let me just interrupt. This does not say that any customer was threatened. The customers who are protected by the medical practitioner exemption are infringers. It says if you infringe but you're a medical practitioner with a certain method, nevertheless, you're not going to be liable. This doesn't say that whoever it was who was speaking said, I'm going to sue customers. What I would submit is that by saying that the ABMAX infringes, let's look at the claims that we're talking about. There are methods of using the device. Who uses the device? Indirect infringement where the direct infringer is including medical practitioners, which is perfectly allowed. That's not barred by 287. It's just you can't sue the direct infringer. That is correct. It does not bar a claim against an indirect infringer. However, if you look at the objective baselessness of this, if you're talking about the context of direct infringement, if a medical practitioner – Right, but this e-mail doesn't say that he threatened to take action against any of the medical professionals. It simply says he's going to take action. It's only infringing on his patents. It's the technology. That implies just as likely that he's intending to sue the manufacturer, not, in other words, the indirect infringer, rather than the direct infringer. I'd point the court to GP Industries. It talks about the objective baselessness standard. It says the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. Again, I would say a doctor that hears this, I'm going to take action, and looks at that patent, the patent is a whole method on what the doctor is doing with the device. It's not – I understand that, yes, there could be indirect infringement, but a doctor hearing a statement that I'm going to take action on this patent that covers exactly what I do in my office, I think looking at that in the context of direct infringement, that would be a threat on the doctor, or could be taken as a threat on the doctor, certainly. So you don't dispute that bad faith has to be found. You just think there is enough in the record from which an inference of bad faith could be made? I would say that there is enough in the record that a doctor hearing Dr. Reinerson's statements could infer that those were about them, and that once you get to that point, it would by definition be objectively baseless because of under 35 U.S.A. 287C, they would be immune from liability, and therefore any threat of litigation. Okay, so we have to take a leap. We have to say the doctor could infer X, and X would be objectively baseless. So that is bad faith. I would say that a statement that I'm going to take action on a patent that covers exactly what the doctor does doesn't require the doctor to take a leap. It may require the doctor to look at the patent, but the standard is whether a reasonable litigate would think that they could realistically expect to assess the merits, and I think if a litigate looked at the patent, it would be clear that any kind of litigation or allegation of infringement against the doctor, or where a doctor, and again, where a doctor felt threatened, because in this case the patent covers a method that the doctor is using, that that would be, there would be no basis under 35 U.S.A. 287C to conclude that that claim could actually be brought against a medical practitioner. Can I ask you, can you clarify for me, I have some confusion about what exactly this sentence, the ordering sentence, defendant, officers, et cetera, are enjoined from making allegations of patent infringement and threatening litigation against plaintiff's potential customers. So one question, does this bar enjoin the bringing of litigation against customers? No, it just bars the allegations of infringement and the threat of litigation. What do you see allegation to mean to pursue Judge Durato's question? We pursue it to mean communication with the customer. Communication to the customer. Yes. Because this lawsuit involves allegations of patent infringement against the customers. That's in fact the direct infringement on which the indirect infringement is asserted. But that's not covered by this. This is supposed to be about communications to customers that they either might be infringing and or might be sued? Yes, Your Honor. And unless you're right about the claim construction, the allegation that they might be infringing would be perfectly true. No, Your Honor, because under 35 U.S.A. 287C they would be immune. No, that's different. They're still infringers. When you read 287, 287 says certain infringers shall not be liable. Doesn't it? It does mention infringement. I would point to court. I understand that currently there's no precedent on the statute at this court, so I'm going to point to other courts. But it has to be the case in order to preserve indirect infringement. There is case law, and this is correct. You can look at the actions of the medical practitioners for purposes of deciding indirect infringement for a supplier. That's right, and you can only have indirect infringement if you have direct infringement. So you have to have actual direct infringers in order to have indirect infringement. You have to have the action that would constitute direct infringement. I would submit and I would point to the MTEL decision that we cited in our The purpose of the statute was to allow for the suppliers, the MICOs, to still be liable, but to give this immunity to the medical practitioners to prevent them from being able to do additional advancements in research. And Senator Frist, in part, said my legislation is very narrow in scope. It would simply prevent the enforcement of patents against health professionals or their affiliated facilities for pure procedure patents such as Dr. Pelfeck. Right, but if that's what this does, there's no evidence in the record, assuming that this email is your best, in which it says the other side ever communicated to doctors that they might be pursued for liability. And I would submit that the record shows that there is both the email and there was also some statements from Mr. Schroeder, our chairman, that Dr. But even his testimony didn't go past this email. That's true. It is focused on the ABMAX infringing. However, again, I would submit that in this context with the 718 patent, we're talking about a method of using the device. So the direct infringement, when you read the patent, it's really about the method a medical practitioner is going to perform in their doctor's office. To be clear about what is covered by this injunction, does that mean how about a press interview? Suppose a reporter asks, say, I understand there's a debate. Are they required to deny that there's any confrontation going on? Required to deny the fact of the litigation? That's my question for you. I don't know. Are they required to do their best to eliminate any public knowledge of this litigation and of the possible infringement? No, Your Honor, because the injunction doesn't prevent them from making allegations or threats about MICO. It's silent to MICO. It's focused on the customers. So who does the injunction or where is the line, as you see it, as to what the injunction permits and does not permit? We see the line as it enjoins BLEFECs from making allegations of infringement or threats of litigation against MICO's customers, and the key word being against. It's against the customers. It's not against MICO. I'm going to say I have some trouble with the word against. I find the word too clear. The allegations that they are making in this lawsuit are allegations of infringement against customers, but they're not making those allegations to the customers. I think you mean to the customers. Well, I'm following the language of the court. I'm having some trouble with the language of the court. That's what I'm trying to clarify. So, yes, the injunction prevents them from making these kinds of threats and allegations to the customers and against the customers. What I would say is it's to the customers, and obviously when you're making that kind of complaint to the customer, the idea would be it's about. But are they allowed to tell the customer that they are suing you? Yes. There's nothing in here about MICO being enjoined from taking any position as to MICO standing in the case. So how about the trade journals and newsworthy events? Those are read by the customers, are they not? So they would be precluded from conceding, admitting, stating that this litigation is going on, infringement litigation? No, Your Honor, because the infringement litigation is, again, it's limited to allegations against MICO, and it's seeking remedies against MICO. What if they said under Akamai, we have to have direct infringers in order to have indirect infringement, and here, among others, the direct infringers would be the doctors, even if they're immune from suit. What if they said that? Well, in that situation, arguably that would not be an allegation or a threat against the customer. It would, again, be explaining an allegation or threat against MICO. Maybe in discussing that, they discuss some aspect of the customer, but it's not directed at the customer. Do you see why some of this is problematic? We're talking about speech. No, I just wanted to raise the question of bad faith. So your position is there's no need to show bad faith in order to have such an injunction preserved? No, Your Honor, we believe that bad faith does need to be shown, and in this case, the bad faith, looking at the injunction as being limited to allegations against MICO's medical practitioner customers, that under 35 U.S.C. 287C, any allegations or threats against those customers would, per se, be objectively baseless because there's immunity and, therefore, bad faith. Now, did you say that the bad faith is in their claim construction of infringement? Bad faith is in the claim construction on infringement. The district court took the position that, on top of the immunity statute, that because there's no infringement, there could be bad faith, and that there would be another layer of likelihood of success because of the non-infringement. But our focus here today is, again, the injunction is limited to the medical practitioner customers, and, therefore, any allegations against those persons would be in bad faith because they're immune under the statute. So your argument depends on the conclusion that immunity equals non-infringer. In part, again, like I said, multiple courts have viewed the statute as a bar on all remedies and, therefore, effectively a defense to infringement. The legislative history has talked about it being in the context of not having been able to enforce the patents against infringement. So it's our position that it is, ultimately, the statute is an immunity-type statute, a defense statute against an infringement action. So, therefore, in that circumstance, it would be objectively baseless to make a threat of litigation or an allegation of infringement under that statute. A threat to the customer to sue the customer directly? Yes, Your Honor. That particular class of customer?  Mr. Chodos, the chairman of MICA, who's the one that's in charge of selling the products, attested to that. There's evidence that the Algebra, which is used as part of the AV Max device, is specifically sold for professionals, optometrists, ER physicians, etc. And our FDA submission on the AV Max was also specifically for healthcare professionals. So the record indicates that this is focused on selling to doctors, selling to optometrists, professionals that treat the eye under the patent. Anything else for Mr. Smith?  Thank you, Your Honors. Mr. Arminio. Thank you, Your Honor. What other classes of customers could there be? Thank you, Judge O'Malley. Just picking up on that exact point, there are distributors who buy the product, there can be retailers who buy the product, there can be... Retailers to then sell to doctors? Sure. There can be distributors... So I'm not letting anybody put something in my eye if they're not a medical professional. I have a hope that the only person who would actually be using the device on a human being is a medical practitioner. But between MICA and the actual doctor using the device, there are going to be a number of layers of distributors, warehousing... Did you argue that to the district court? It was, and we see, yes, we argue that there can be non-medical professional customers, and the district court actually addressed that in its decision. If we look at the decision at pages 16 and 17, the court even continues, quote, therefore there is also a strong likelihood of success on plaintiff's contention that MICA customers who are not medical practitioners are also not liable for infringement, close quote, relying on the claim construction and the non-infringement analysis. So even in the section about medical practitioner liability in the decision, pages 16 and 17, the district court addresses the non-medical practitioner customers of MICA. So there are such customers. Counsel, I think, a couple of times tried to rewrite the injunction to be limited to just medical practitioners, but it's not so limited. We've read the words several times today of the decision at 23, quote, making allegations of patent infringement and threatening litigation against plaintiff's potential customers. So it's any customers, not just medical practitioners. Moreover, I think, Judge Toronto, you made the point that medical practitioners are the infringers. They're not going to be held liable, but they are the direct infringers. Their direct infringement will be the predicate for the indirect inducement and contributory infringement charges, and the statute plainly provides for that. 287C talks about the medical practitioner's performance of a medical activity that, quote, constitutes an infringement under Section 271A or B. So right in the statute, it's saying the doctors can be infringers. They're just not going to be held liable for it. So, Judge O'Malley, this goes to your question to counsel. Is he equating immunity with non-infringement? And counsel, I think, said, at least in part, their position is requiring that the court equate those two, and they're not equatable. These doctors who are practicing this method will be direct infringers, but they have complete immunity. The immunity doesn't make them non-infringers. They are infringers. That will be the basis of our indirect infringement claims. If there are any questions the court has, I want to be sure to address any of those. But otherwise, witnesses. Thank you. The case is taken under submission. Thank you. All rise. Thank you. You can come this way. You sure? Thanks. Okay. That's good. Go out in the direction of the hospital. It's in there.  Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah.  Thank you. Thank you. Thank you. Thank you. Thank you.